Mitchell B. GARSHMAN, Plaintiff,

v.

The PENNSYLVANIA STATE UNIVERSITY et al., Defendants.

Civ. No. 75-597.

United States District Court, M. D. Pennsylvania.

June 10, 1975.

Robert W. Barton, Killian & Gephart, Harrisburg, Pa., for plaintiff.

Delbert J. McQuaide, John C. Gilliland, II, Grant H. Fleming, McQuaide, Blasko & Brown, State College, Pa., for defendants.

## OPINION

MUIR, District Judge.

### I. Findings of Fact.

This case was filed on May 20, 1975. A hearing on the Motion for Preliminary Injunction was held on May 30, 1975.

The following facts have been stipulatd to by counsel as uncontested:

1. Defendant The Pennsylvania State University is an educational corporation created by Act of the Legislature of 1855.

2. The said Act of the Legislature of 1855 placed the management and operation of Defendant University in Defendant Board of Trustees.

3. Defendant John W. Oswald is President of Defendant University and in that capacity is charged with the immediate management and government of Defendant University.

4. Defendant University has a College of Medicine and teaching hospital located in Hershey, Pennsylvania.

5. Said College of Medicine and teaching hospital are known collectively as "The Milton S. Hershey Center of The Pennsylvania State University."

6. Plaintiff is a first-year student in the College of Medicine of Defendant University.

7. Harry Prystowsky, M.D., is employed by Defendant University as the Provost and Dean of the College of Medicine at The Milton S. Hershey Medical Center of Defendant University.

8. Cheston M. Berlin, Jr., M.D., is employed by Defendant University as an Associate Professor of Pediatrics and as Assistant Dean for Student Affairs at The Milton S. Hershey Medical Center of Defendant University.

9. Steven L. Quattropani, Ph.D., is employed by Defendant University as an Assistant Professor in the Department of Anatomy and the Department of Obstetrics and Gynecology at The Milton S. Hershey Medical Center of Defendant University.

10. On May 2, 1975, Dean Prystowsky wrote to Plaintiff informing him that he was dismissed from the College of Medicine of Defendant University due to academic dishonesty.

11. On May 6, 1975, Plaintiff met with Dr. Berlin and then with Dean Prystowsky to request the reconsideration of his dismissal.

12. On May 8, 1975, Dean Prystowsky wrote a letter to Plaintiff stating

that he had reconsidered his recent decision to dismiss Plaintiff from the College of Medicine, and that his previous decision remained unchanged.

13. On May 9, 1975, Plaintiff was not permitted to attend a scheduled laboratory class.

14. Said laboratory class was the only class which Plaintiff was not permitted to attend.

15. Plaintiff has been given the opportunity to make up the May 9, 1975, laboratory class he missed.

16. During the period leading up to and including Dean Prystowsky's letters of dismissal of May 2, 1975 and May 8, 1975, and Dr. Berlin's informing Plaintiff's instructors of his dismissal from the College of Medicine, it was Dean Prystowsky's and Dr. Berlin's belief that dismissal of Plaintiff was a matter properly for Dean Prystowsky's determination as involving an academic matter.

17. On May 9, 1975, following consultation with Defendants' legal counsel, Dr. Berlin, by memo dated May 9, 1975, stated to Dean Prystowsky his desire to refer the matter to a University Hearing Board pursuant to Defendant University's Discipline System.

18. In response to an inquiry of Plaintiff's legal counsel, Defendant's legal counsel on May 10, 1975, informed Plaintiff's counsel that the letters of dismissal of Dean Prystowsky resulted from a misunderstanding of the proper procedure under Defendant University's Discipline System for handling cases of academic dishonesty.

19. At the same time, on May 10, 1975, Defendant's legal counsel informed Plaintiff's legal counsel that the matter was being referred to a University Hearing Board at The Milton S. Hershey Medical Center for disposition pursuant to the Defendant University's Discipline System.

20. At the same time, on May 10, 1975, Defendant's legal counsel informed Plaintiff's legal counsel that Plaintiff was not dismissed from the College of Medicine, but rather remained a student in good standing until the matter was finally disposed of pursuant to Defendant University's Discipline System.

21. In response to a further inquiry of Plaintiff's legal counsel, Defendant's legal counsel informed Plaintiff's legal counsel that under Defendant University's Discipline System they would not be permitted to represent Plaintiff before the student discipline boards, but that Plaintiff could be assisted by an advisor of his choice who is a member of the University community.

22. On May 12, 1975, Dr. Berlin informed Plaintiff's instructors that Plaintiff should be permitted to return to class since the matter was being referred to a University Hearing Board pursuant to Defendant University's Discipline System.

23. Plaintiff was permitted to return to class on May 12, 1975.

24. Defendant University has adopted a written Code of Conduct which has been operative and in effect for the 1974–1975 academic year.

25. The Code of Conduct states that misconduct which may result in disciplinary action consists, *inter alia*, of academic dishonesty, including cheating and plagiarism.

26. Defendant University had adopted a range of eight (8) possible sanctions for the violation of its regulations or Code of Conduct, as follows:

(1) Disciplinary Warning.
(2) Disciplinary Probation.
(3) Disciplinary Suspension.
(4) Disciplinary Dismissal.
(5) Disciplinary Expulsion.
(6) Loss of Privilege.
(7) Reimbursement.
(8) Summary Suspension.

27. A concise definition of each of the above-mentioned sanctions is more fully set forth in Defendant University's document, entitled "The Discipline System for All Registered Students," Subsection "E" entitled "Sanctions for Violation of Regulations."

28. The purpose, procedure and organization of Defendant University's Discipline System are set forth in detail in the document entitled "The Discipline System for All Registered Students" which may be found in page 15 of Defendant University's publication entitled "Policies and Rules for Students."

29. The University Discipline System provides for a body known as the University Hearing Board, which board has jurisdiction to hear cases involving alleged violations of the Code of Conduct.

30. The President of the University has the authority to appoint a hearing board at the Milton S. Hershey Medical Center of The Pennsylvania State University.

31. A student has the right to have his case heard before the University Hearing Board.

32. The University Hearing Board may, after hearing, recommend any of the above-mentioned sanctions in a particular case to the Director of the Office of Conduct Standards.

33. A student has the absolute right to appeal to the University Appeals Board from a recommended sanction of the University Hearing Board when such recommended sanction includes separation from the University.

34. The Director of the Office of Conduct Standards may request a review by the University Appeals Board of the findings and/or recommendations of the University Hearing Board.

35. The Student Standards Boards, having jurisdiction primarily in the residence hall areas where Code of Conduct violations are alleged, do not have a bearing on the case at bar as it relates to the Defendant University's disciplinary system.

36. The University Discipline System provides for the Director of the Office of Conduct Standards.

37. The Director of the Office of Conduct Standards may personally hear a case against a student when: (a) the student does not contest the validity of the charge made against him; (b) when the student executes a written waiver of his right to have the case heard by the University Hearing Board; (c) when the student requests in writing that his case be heard by the Office of Conduct Standards.

38. The Director of the Office of Conduct Standards may not impose the sanction of dismissal and expulsion, but instead must submit such sanction to the President of the University in the form of a recommendation.

39. The Director of the Office of Conduct Standards has the responsibility of receiving complaints against a student, and when the complaint(s) substantially indicates a violation, he may formally charge the student.

40. The Director of the Office of Conduct Standards has the duty to inform the student in writing of the specific charges.

41. The Director of the Office of Conduct Standards has the responsibility to inform the student of his rights and to inform the student of the hearing procedures and sanctions reasonably in advance of a scheduled hearing.

42. After hearing before the University Hearing Board, the Director of the Office of Conduct Standards shall receive the Board's disposition of the case in the form of a recommendation.

43. The recommendations submitted by the University Hearing Board to the Director of the Office of Conduct Standards must be implemented by the Director unless:

(a) The recommendation is for separation from the University (suspension, dismissal or expulsion), in which case the Director must transmit the case to the President of the University for disposition;

(b) The Director requests a review of the case by the University Appeals Board;

(c) The Director transmits the case to the President of the University for disposition.

44. If the student's case has been reviewed by the University Appeals Board, the recommendations submitted by the University Appeals Board to the Director of the Office of Conduct Standards which include separation from the University may not be implemented by the Director and must be referred to the President of the University.

45. The recommendations not including separation from the University submitted by the University Appeals Board to the Director of the Office of Conduct Standards may be implemented by the Director or may be referred by the Director to the President of the University.

46. A student who wishes to appeal a decision and/or recommendation resulting from a hearing before the Director of the Office of Conduct Standards, must direct his written request for appeal within five (5) days of the hearing to the University Appeals Board.

47. The University Disciplinary System provides for a body known as the University Appeals Board which shall review the findings and/or recommendations of the University Hearing Board and the decisions and/or recommendations of the Director of the Office of Conduct Standards.

48. The University Appeals Board must review all cases appealed by the student where the recommended sanctions include separation from the University.

49. The University Appeals Board may, in its discretion, hear a case *de novo* on appeal whenever:

(a) A student requests review of recommendations, findings, or decisions which do not include separation from the University, made either by the University Hearing Board or by the Director of the Office of Conduct Standards.

(b) The Director of the Office of Conduct Standards requests review of any recommendations and/or findings.

50. The University Appeals Board may recommend any of the above-mentioned sanctions which recommendations shall be forwarded to the Director of the Office of Conduct Standards.

51. Only the President of the University may impose the sanctions of dismissal and expulsion.

52. All recommendations of separation from the University made to the President are advisory and not mandatory.

53. A student may not appeal the recommendations made by the University Appeals Board to the President unless such recommendations include separation from the University.

54. The University Discipline System provides that the student must receive written notice of the charges sufficiently in advance of the hearing to afford a reasonable opportunity to prepare his defense.

55. The notice of charges must specify the regulations which the student is alleged to have violated, together with the time, date and place of the occurrence.

56. The student must be advised of his rights and must receive a statement of the hearing procedure and possible sanctions a reasonable time in advance of the hearing so as to enable him to prepare his defense.

57. The University Discipline System provides that the hearings "shall not be restricted unduly by rules of procedure or evidence."

58. The accused student at his hearing has the right to challenge any member on the hearing board on grounds of prejudice.

59. The accused student has the right to be assisted at the hearing by an advisor of his choice, so long as said advisor is either a University administrative official, faculty member or student.

60. The advisor to the accused student may advise the student in the preparation of his defense, accompany the student at the hearing, assist in cross-examining all witnesses, and advise the student in the preparation of appeals.

61. The student has the right to call a reasonable number of witnesses in his defense at the hearing.

62. The accused student cannot be compelled to testify at the disciplinary hearing.

63. The accused student may request the Director of the Office of Conduct Standards to require the production of records or other exhibits.

64. The University has the burden of proof of guilt of the accused student by clear and convincing evidence.

65. The accused student has the right not to be confronted by unknown or unidentified witnesses.

66. A written report of the hearing must be made consisting of:

(a) Notice of the charges and other bearing documents;

(b) A summary of evidence presented;

(c) The findings of the board;

(d) The sanction(s) recommended.

67. A board of original jurisdiction may grant a new hearing if a student files a written application for said new hearing specifically alleging newly discovered evidence.

68. Dr. Berlin as the Assistant Dean for Student Affairs serves as the person fulfilling the functions of the Office of Conduct Standards at Milton S. Hershey Medical Center of Defendant University.

69. A University Hearing Board and University Appeals Board at The Milton S. Hershey Medical Center of Defendant University have been appointed by Defendant Oswald pursuant to Defendant University's Discipline System.

70. On May 16, 1975, a pre-hearing interview for the purpose of advising Plaintiff of his rights with Dr. Berlin was scheduled for Monday, May 19, 1975 at 9:30 a. m.

71. By memorandum dated May 16, 1975 and delivered to Plaintiff on that date, Plaintiff was notified of the date and time for said pre-hearing interview.

72. At the same time as said memorandum concerning the pre-hearing interview was delivered to Plaintiff, Plaintiff was given a document entitled, "YOU HAVE A DISCIPLINARY PROBLEM!"

73. Said documents informed Plaintiff of the material he would receive at the pre-hearing interview, his right to have a hearing or have the matter determined by the Assistant Dean for Student Affairs, and that he may be assisted by an advisor who is a member of the University community.

74. On May 19, 1975, at 9:30 a. m., Plaintiff met with Dr. Berlin and gave him a letter from Plaintiff's legal counsel.

75. Said letter from Plaintiff's legal counsel stated that Plaintiff's legal counsel had advised Plaintiff that he should not participate in the interview since Plaintiff could not be represented by legal counsel of his choice at the interview.

76. Plaintiff, at that time, refused to participate in the pre-hearing interview or to receive any materials which would have been presented to him during the interview.

77. On the same day, May 19, 1975, at 12:00 Noon, Plaintiff appeared at Dr. Berlin's office.

78. At that time, Plaintiff was given the following documents by Dr. Berlin:

(a) Letter dated May 16, 1975, to Plaintiff from Dr. Berlin;

(b) A statement of charges and Notification of Administrative Summons;

(c) Waiver or Acceptance of Board Hearing;

(d) University Sanctions for Violation of Regulations;

(e) University Procedures for Disciplinary Hearings;

(f) Procedures for Appeal or Review.

79. Plaintiff acknowledged receipt of the documents listed in paragraph 78(b), (c), (e) and (f) above, by signing a written receipt for the same.

80. The letter dated May 16, 1975, mentioned in 78(a) above: (a) explained the "Waiver or Acceptance of Board

Hearing" form; (b) advised Plaintiff that, if he requested a hearing in the Office of Student Affairs rather than before the University Hearing Board, the sanction would be expulsion from the University; (c) advised Plaintiff to read all the documents he was receiving prior to completing the "Waiver or Acceptance of Board Hearing" form; and (d) directed him to return the "Waiver or Acceptance of Board Hearing" form within forty-eight (48) hours.

81. The "Statement of Charges and Notification of Administrative Summons" informed Plaintiff that he was formally charged with the following violations of University regulations:

1. ACADEMIC DISHONESTY—The accused did on April 25, 1975, commit academic dishonesty by copying on the Embryology examination (ANAT 512) in Lecture Room A at 9:00 a. m. The accused did submit the copied examination to the University for academic credit.

2. Furnishing false information to the University.

82. The "Waiver or Acceptance of Board Hearing" form stated the charges against Plaintiff and permitted him to indicate whether:

(a) he contests the validity. of the charge and desires a hearing before the University Hearing Board;

(b) he does not contest the validity of the charges, but waives a Board Hearing and requests an immediate hearing before the Assistant Dean for Student Affairs.

(c) he does not contest the validity of the charges, waives a Board Hearing and requests a hearing before the Assistant Dean for Student Affairs at a later date; or

(d) he does not contest the validity of the charges and requests a hearing before the University Hearing Board.

83. The "University Sanctions for Violation of Regulations" explains the different types of sanctions which could be applied.

84. The "University Procedures for Disciplinary Hearings" gives the procedures of the University which are followed in disciplinary matters.

85. The "Procedures for Appeal or Review" explains the appeals procedure which is available and may be followed in disciplinary matters.

86. On May 20, 1975, at 2:00 P.M., plaintiff returned the "Waiver or Acceptance of Board Hearing" form to Dr. Berlin.

87. The returned form was signed by Plaintiff and checked to state his choice to contest the validity of the charges and to request that a hearing be scheduled before the University Hearing Board.

88. On the "Waiver or Acceptance of Board Hearing" form, Plaintiff also stated that he desired to have an open hearing.

89. Pursuant to Plaintiff's request and Defendant University's Discipline Policies, a University Hearing Board hearing will be convened to hear Plaintiff's case.

90. The date for the University Hearing Board hearing has not yet been established.

91. When held, the University Hearing Board hearing, and any Appeals Board Hearing which may follow, will be open to members of the University community.

92. On behalf of the Defendant University, the charges and evidence will be presented by Dr. Berlin.

93. Dr. Berlin is not an attorney.

94. Dr. Berlin is a medical doctor and has not received any legal education.

95. Plaintiff at this time is a student in good standing with the same rights and privileges as other students in the College of Medicine of Defendant University.

96. Plaintiff's status as a student in good standing with the same rights and privileges as other students in the College of Medicine of Defendant University will not be affected by the disciplinary proceedings against him until such

proceedings have been completed and are final pursuant to the Defendant University's Discipline System.

97. The regular academic schedule for a student in the College of Medicine of the Defendant University is as follows:

    (a) enrolled for three terms;

    (b) not enrolled for one term;

    (c) enrolled for three terms;

    (d) not enrolled for one term;

    (e) enrolled for four terms;

    (f) not enrolled for one term;

    (g) enrolled for two terms.

98. Plaintiff is at this time completing his third term of study as a student in the College of Medicine of Defendant University.

99. Plaintiff's last examination for this term of study is scheduled for June 2, 1975.

100. The last day of classes scheduled for this term of study is June 6, 1975.

101. There are no required courses or elective courses scheduled and available for Plaintiff to enroll in during the summer, 1975.

102. No required courses for Plaintiff are scheduled until Fall Term, 1975.

103. Plaintiff is not registered for any classes in the College of Medicine during the summer, 1975.

104. Fall Term, 1975, begins on September 8, 1975.

105. In student discipline hearings of Defendant University, neither Defendant University nor the hearing boards are represented by counsel.

Also, counsel stipulated in chambers prior to the hearing that, for the purposes of this case only, the actions of the Defendants are "under color" of state law as that phrase is intended by 42 U.S.C. § 1983.

The following additional facts were proven at the hearing on the Motion for Preliminary Injunction:

1. The Plaintiff Garshman admitted to Dr. Quattropani that he cheated on an examination in a course entitled "Anatomy 512."

2. Garshman admitted to Dr. Berlin that he cheated on the examination in Anatomy 512.

3. Garshman admitted to Dean Prystowsky that he cheated on the examination in Anatomy 512.

4. At the hearing before the University Board, Garshman intends to challenge the validity of the accusations that he submitted a copied examination in Anatomy 512 and that he furnished false information to the University.

5. The University Hearing Board will not be requested by Dr. Berlin to schedule a hearing with respect to the allegations against Garshman until counsel for the Defendants inform him to do so.

6. Such notification from defense counsel to Dr. Berlin will not occur prior to this Court's decision on the Motion for Preliminary Injunction.

7. In the event of a decision on the request for a preliminary injunction adverse to Garshman, defense counsel will most likely allow Dr. Berlin to initiate the proceedings against Garshman.

8. In such a case, the hearing before the University Board may or may not occur prior to the hearing on the request for final injunction which is scheduled to follow the Court's June list of cases for trial but in no event prior to July 7, 1975.

9. Garshman has since high school pursued his academic studies with the intent of becoming a medical doctor.

## II. Background.

Garshman has made only one challenge to the procedures which the Defendants follow when a student at the University Medical Center has been accused of academic dishonesty. Thus, the only ultimate issue before the Court is whether or not he is entitled to representation of counsel at the hearing before the University Hearing Board which will consider the charges against him, make findings and recommend sanctions, if any. The interlocutory issue to which this opinion speaks is the propriety of the issuance of a preliminary injunction.

██ Garshman requests the Court preliminarily to enjoin the Defendants from denying to him represantation by legal counsel at University disciplinary hearings. The function of a preliminary injunction is to preserve the status quo pending the outcome of litigation. 7 Moore Federal Practice, ¶ 65.04[1] (2d Ed. 1968). "Status quo" in that context has been interpreted to refer to the last uncontested set of facts preceding the pending controversy. United States v. Leathers, 134 U.S.App.D.C. 38, 412 F.2d 169 (1969); Westinghouse Electric Corporation v. Free Sewing Machine Company, 256 F.2d 806, 808 (7th Cir. 1958). A preliminary injunction which would require the University to conduct a hearing at which Garshman was represented by counsel would violate that standard by changing the "status quo". Consequently, the form of injunction which the Court will consider and which it will interpret Garshman's motion to have requested is one which would prohibit the University from conducting a hearing without the presence of counsel for Garshman until decision has been reached by this Court on the request for final injunction.

██ In order to be entitled to preliminary injunctive relief, Garshman must establish the following four elements:

(1) That he has a reasonable probability of eventual success on the merits of this case. Delaware River Port Authority v. Transamerican Trail Tr. Inc., 501 F.2d 917, 919–920 (3d Cir. 1974); A. L.K. Corp. v. Columbia Pictures Industries, Inc., 440 F.2d 761, 763 (3d Cir. 1971).

(2) That he will suffer irreparable injury if the preliminary injunction is not granted to prevent a change in the status quo. Delaware River Port Authority v. Transamerican Trail Tr. Inc., supra; A.L.K. Corp. v. Columbia Pictures Industries, Inc., supra.

(3) That his interest in the granting of the preliminary injunction outweighs the potential harm to the other parties. Commonwealth of Pa. ex rel. Creamer v. United States Department of Agriculture, 469 F.2d 1387 (3d Cir. 1972); In Re Penn Central Transportation Company, 457 F.2d 381 (3d Cir. 1972).

(4) That his interest in the granting of the preliminary injunction outweighs considerations of the public interest. Commonwealth of Pennsylvania ex rel. Creamer v. U. S. Department of Agriculture, supra; In Re Penn Central Transportation Company, supra.

Garshman has demonstrated factors 3 and 4 above by default. No evidence to the contrary is before the Court. But, as to the second factor, there is question whether Garshman has demonstrated that he will incur irreparable injury if an injunction is denied to him. Garshman bases his demonstration of irreparable injury on the assumption that the proceedings before the University Board will culminate in his separation from University Medical School. Such an assumption is, at this time, however, based only on speculation. Nevertheless, the Court does not need to reach a decision on this point because it is of the opinion that Garshman has failed to carry his burden of proof with respect to the first factor—reasonable probability of his eventual success on the merits of the litigation. For that reason, he is not entitled to a preliminary injunction.

Neither the Supreme Court nor the Third Circuit has dealt with the question presented by this case. In fact, the Supreme Court in Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 741, 42 L.Ed.2d 725 (1975), expressly reserved decision on the procedures required where high school students were faced with expulsion.

██ In support of his position that due process entitles him to the representation by legal counsel at the University disciplinary proceedings, Garshman relies primarily on the holding of the United States Supreme Court in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In Goldberg, the Plaintiffs, welfare recipients who had had their benefits terminated without a hearing, argued that

they should be entitled to a hearing prior to termination of welfare and that at that hearing they should be entitled to the representation of an attorney. The Supreme Court agreed with their contention but declined to go so far as to conclude that they were entitled to appointment of counsel.

There are certain differences between that case and the instant case which undermine Garshman's contention that the *Goldberg* holding should be extended to his situation. The most notable of these is the fact that the potential loss of benefits to the welfare recipients, many of whom were found to be living at a bare subsistence level even while receiving welfare payments, is manifestly more severe than the potential loss to Garshman notwithstanding that his loss is potentially significant. Further, Garshman is a literate and educated individual who, unlike the vast majority of welfare recipients, has the ability to understand his rights and express himself. Cf. Hagopian v. Knowlton, 470 F.2d 201, 211–212 (2d Cir. 1972). Since due process is protean in nature, In-Cho Chung v. Park, 514 F.2d 382 (3d Cir. filed April 11, 1975), it is legitimate for this Court in declining to extend *Goldberg* to this case to take into account Garshman's ability to present his case and defend himself.

In Hagopian v. Knowlton, *supra,* a case involving the potential dismissal of a cadet from West Point for deficiency in conduct, the Second Circuit held that while Hagopian could not be denied the advice and assistance of counsel in preparation of his defense, he could be denied that counsel's presence at the hearing before the Academic Board which was to consider his separation. This Court recognizes that *Hagopian* paid great deference to the fact that the institution in question was a military academy and that that factor played a significant role in the Second Circuit's decision to deny Hagopian's request. However, the interests of a tax-supported state institution in an orderly procedure confined to its own community for the handling of instances of alleged academic dishonesty is not to be regarded lightly. Judicial reluctance to force the inclusion of a non-University individual into this delicate decision-making process should be that much greater where, as here, the procedures involve elaborate efforts to insure that a fair result is reached. The Court is of the view that a determination as to the academic honesty of a student is analogous to the determination of professional competency of a professor and is a matter peculiarly within the discretion of a college administration. See In-Cho Chung v. Park, *supra.* In *In-Cho Chung,* the Third Circuit in delineating those safeguards to which a professor faced with termination is entitled nowhere included the right to representation of counsel at the pre-termination hearing. That Dr. Chung was in fact represented by counsel at his hearing does not affect the holding in his case nor its application to the instant case. The Third Circuit stated that if the procedures followed by the college are adequate to prevent unreasonable, arbitrary or capricious termination decisions, they satisfy due process. In the face of the extensive procedural safeguards afforded to Garshman by the University with respect to the charges against him, the Court cannot accept the proposition that the one factor—exclusion of counsel at the hearing—renders the University's procedure susceptible to unreasonable, arbitrary or capricious termination decisions.

The sum of the foregoing analysis is that the Court is not convinced that Garshman has a reasonable probability of successfully demonstrating at the hearing on the final injunction that he is entitled to the representation of counsel at his disciplinary hearing before the University Board. Rather, given the case as it now appears to the Court, with due regard for the shortness of time which it has had to consider the issues, it appears unlikely that Garshman will ultimately prevail.

III. Conclusions of Law.

The Plaintiff, Mitchell B. Garshman, is not entitled to a preliminary injunction enjoining the Defendants from convening, in the absence of his counsel, the University Hearing Board to consider the charges of academic dishonesty against him.

An appropriate order will be entered.