Steven A. GABRILOWITZ,
Plaintiff-Appellee,

v.

Frank NEWMAN, President of the University of Rhode Island, and Jack Shay, Vice President for Student Affairs of the University of Rhode Island, Defendants-Appellants.

No. 77–1565.

United States Court of Appeals,
First Circuit.

Argued March 8, 1978.
Decided June 21, 1978.

Daniel J. Murray, Providence, R. I., with whom Joseph DeAngelis and Letts, Quinn & Licht, Providence, R. I., were on brief, for defendants-appellants.

Milton Stanzler, Providence, R. I., with whom Richard A. Boren and Abedon, Stanzler, Biener, Skolnik & Lipsey, Providence, R. I., were on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal by defendants-appellants, officials of the University of Rhode Island, pursuant to 28 U.S.C. § 1292(a) from an order of the United States District Court for the District of Rhode Island granting a preliminary injunction restraining appellants from conducting a disciplinary hearing against plaintiff-appellee, Steven A. Gabrilowitz, unless he is allowed to be represented by an attorney of his choice.

At the outset, we note that the issue before us is somewhat different than that presented by the terms of the injunction. We interpret the injunction to mean, as counsel did in their briefs, that appellee's attorney, if allowed to represent him at the hearing, would do so in the traditional sense, *i. e.,* he would conduct direct and cross-examination. At oral argument, counsel for appellee stated in response to a question from the bench that it was not necessary for the lawyer to participate in direct or cross-examination; all that appellee wanted was that a lawyer be at his side during the hearing for consultation and advice. It is in this context, therefore, that we address ourselves to the case.

On November 11, 1977, the South Kingstown, Rhode Island, Police Department charged appellee, a senior at the University of Rhode Island (U.R.I.), with assault with intent to commit rape on another student on October 18, 1977.[1] While appellee was at the police station being charged, a U.R.I. employee delivered a letter to him notifying him that he had been suspended from the school and barred from entering the campus. On November 16, 1977, U.R.I. sent appellee another letter informing him that the campus police had charged him with violating the U.R.I. *Community Standards of Behavior.*[2] Gabrilowitz was directed to defend against the specific allegations of assault with intent to rape and an additional allegation of a later assault on the same student before the University Board on Student Conduct (U.B.S.C.). The letter outlined the procedures of the hearing and informed appellee of the existence of rules defining his rights at the hearing. One of the rules prohibits the existence or presence

---

1. R.I.Gen.Laws § 11–5–1 (1970).

2. Appellee was charged with violating Section 2.4, Part 2, of the *Community Standards of*

*Behavior*: "Fighting, threats to, physical abuse of, or harrassment [*sic*] which threatens to or endangers the health, safety, or welfare of a member of the university community."

of legal counsel at the hearing. Appellee, thereupon, petitioned the district court for an injunction pursuant to 42 U.S.C. § 1983.

The procedural guidelines for a disciplinary hearing are set forth in Section 23 of Part 2 of RamPages, a student's guide to the University. While the student is not "permitted to employ professional legal counsel or other persons from outside the University community to present the case before the hearing board," he "shall have the right to request the assistance of an advisor of his/her choice from the community." Section 23.6.

"The technical rules of evidence applicable to civil and criminal trials are not applicable and the board shall rule on the admissibility of evidence." Section 23.8.

"During the hearing, the accused student and/or his/her advisor shall have the right to cross-examine all witnesses and to view and question all evidence presented to the judicial board. . . ." Section 23.9.

"Decisions shall be based only upon evidence and testimony introduced at the hearing." Section 23.10.

"In cases in which a student denies an allegation, the burden of proof shall rest upon the person bringing the charge." Section 23.11.

"All decisions made by a judicial board shall be by a majority vote. . . ." Section 23.12.

There is a right of appeal: "Such appeals shall be based only on specific evidence, presenting [sic] in writing, of fraud, denial of rights, procedural error, or on the claim of new evidence not previously available which would have materially affected the decision of the board." Section 23.22.

After a two-day hearing, the district court found irreparable harm and, while noting that the weight of authority supported the position of appellant, decided that, under the circumstances of this case, there was a due process violation.

■ We note preliminarily that this action is not barred by the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Younger* applies to some civil and administrative proceedings, *Geiger v. Jenkins,* 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed.2d 525 (1971), but is not a bar to a challenge to a state proceeding claimed to be constitutionally defective. *Withrow v. Larkin,* 421 U.S. 35, 44 n. 8, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). *Younger* presupposed the existence of a competent state forum. The U.R.I. *Community Standards of Behavior* prohibit legal counsel under all circumstances. There is no opportunity here to present the federal claim in a state judicial proceeding. *Cf. Juidice v. Vail,* 430 U.S. 327, 337 n. 15, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977).

■ The issuance of a preliminary injunction lies within the sound discretion of the trial court and will not be reversed absent a clear abuse of that discretion, *Grimard v. Carlston,* 567 F.2d 1171 (1st Cir. 1978), or a clear error of law, *Automatic Radio Mfg. Co. v. Ford Motor Company,* 390 F.2d 113, 115 (1st Cir.), *cert. denied,* 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653 (1968). The power of a federal court to stay a civil proceeding because of a nexus between that proceeding and a pending criminal case is well established. *United States v. Kordel,* 397 U.S. 1, 12 n.25, n.27, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970); *Arthurs v. Stern,* 560 F.2d 477, 479 (1st Cir. 1977); *Silver v. McCamey,* 95 U.S.App.D.C. 318, 221 F.2d 873 (1955).

Appellants' position is that the district court committed errors of law of such magnitude in issuing the injunction as to amount to an abuse of discretion. In addition to claiming that the order requiring the appointment of counsel in a student disciplinary hearing is contrary to authority, appellants also claim that it was error for the district court to take into consideration the effect that the disciplinary proceeding might have on the pending criminal action.

We deal first with the alleged error of considering the implications of the criminal case. We reject at the outset appellants' assertion that criminal and civil proceedings

arising out of the same facts are unrelated and must be treated as separate entities. Judicial deference to academic autonomy is not a before-the-fact policy. Rather, it emerges from a balancing of the interests of the parties. *See e. g., Downing v. Le-Britton,* 550 F.2d 689 (1st Cir. 1977); *Wasson v. Trowbridge,* 382 F.2d 807 (2d Cir. 1967).

Were the appellee to testify in the disciplinary proceeding, his statement could be used as evidence in the criminal case either to impeach or as an admission if he did not choose to testify. Appellee contends that he is, therefore, impaled on the horns of a legal dilemma: if he mounts a full defense at the disciplinary hearing without the assistance of counsel and testifies on his own behalf, he might jeopardize his defense in the criminal case; if he fails to fully defend himself or chooses not to testify at all, he risks loss of the college degree he is within weeks of receiving and his reputation will be seriously blemished. Appellants respond that appellee risks nothing by mounting a full defense at the hearing because his words would be compelled testimony precluded from admission at the criminal case under the doctrine of *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). *See also Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977). It is our opinion that neither *Garrity* nor *Lefkowitz* apply to the facts of this case.

In *Garrity v. New Jersey, supra,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562, police officers were questioned in the course of a state investigation of ticket fixing.

Before being questioned, each appellant was warned (1) that anything he said might be used against him in any state criminal proceeding; (2) that he had the privilege to refuse to answer if the disclosure would tend to incriminate him; but (3) that if he refused to answer he would be subject to removal from office. *Id.* at 494, 87 S.Ct. at 617.

In setting aside the convictions that resulted from testifying at the investigation, the Court focused on the fact that "[t]he choice imposed on petitioners was one between self-incrimination or job forfeiture." *Id.* at 496, 87 S.Ct. at 618. The Court found: "Where the choice is 'between the rock and the whirlpool,' duress is inherent in deciding to 'waive' one or the other." *Id.* at 498, 87 S.Ct. at 619.[3]

Duress was also the key factor in *Lefkowitz v. Cunningham, supra,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1. At issue was the constitutionality of a New York statute providing that, if an officer of a political party was subpoenaed by a grand jury to testify about the conduct of his office and refused to testify or waive immunity against criminal prosecution, his term of office would be terminated and he would be disqualified from holding any party or public office for five years. In holding the statute unconstitutional, the Court said: "These cases settle that government cannot penalize assertion of the constitutional privilege against compelled self-incrimination by imposing sanctions to compel testimony which has not been immunized." *Id.* at 806, 97 S.Ct. at 2137.

The case at bar does not involve compelled testimony. The U.R.I. standards governing a disciplinary hearing neither require nor prohibit the drawing of an adverse inference from the silence of the accused. The procedures outlined in Section 23.10 state simply: "Decisions shall be based only upon evidence and testimony

---

**3.** Appellants misconstrue the reliance of the Vermont Supreme Court on *Garrity* in *Nzuve v. Castleton State College,* 133 Vt. 225, 232, 335 A.2d 321, 326 (1975), a case involving a factual situation nearly identical to the one at hand. The court in *Nzuve* concurred with the line of reasoning advanced in *Furutani v. Ewigleben,* 297 F.Supp. 1163 (N.D.Cal.1969), that any statement made under compulsion by students subject to disciplinary proceedings would not be admissible at a subsequent criminal proceeding. However, the court also found no compulsion to exist in *Nzuve,* and ruled that any statement made by the student would be voluntary and subsequently admissible at the criminal proceeding. We also note that the student in *Nzuve* was entitled to counsel at the disciplinary proceeding. *Nzuve, supra,* 133 Vt. at 232, 335 A.2d at 326.

introduced at the hearing." The letter of suspension enclosed a list of procedures to be followed during the hearing which included the right "[t]o remain silent and not testify against himself/herself." The outline of procedures also stated: "Student[s] should remember that if they remain silent, the Board is compelled to hear the case and render a decision based on the evidence presented." Exhibit No. 4 at I(c)(5). There is no indication that the hearing board will consider the silence of an accused as either pointing to or being conclusive evidence of guilt. Appellee's testimony would be, therefore, entirely voluntary and subsequently admissible at the criminal case. Although the possibility of expulsion may make participation a wise choice, the hearing procedures do not place appellee "between the rock and the whirlpool." *Garrity v. New Jersey, supra,* 385 U.S. at 498, 87 S.Ct. at 619. He can, if he wishes, stay out of the stream and watch the proceedings from dry land. But, if he does so, he forfeits any opportunity to control the direction of the current. Appellee must decide whether or not to testify at the hearing with the knowledge that, if he does, his statements may be used against him in the criminal case.

■ A factor which further complicates the choice is an awareness of his own inability to evaluate the effect his statements may have in the criminal case. Although the choice facing him is difficult, that does not make it unconstitutional. In *McGautha v. California,* 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), a case involving a convicted murderer faced with the Hobson's choice of testifying in the hope of a lenient sentence and risking self-incrimination or remaining silent and facing a harsh sentence, the Court said: "The criminal process, like the rest of the legal system, is replete with situations requiring the 'making of difficult judgments' as to which course to follow." *Id.* at 213, 91 S.Ct. at 1470. This court followed *McGautha* when considering the case of a convicted felon found in violation of a deferred sentence agreement. *Flint v. Mullen,* 499 F.2d 100 (1st Cir. 1974). In rejecting the contention

that defendant was unconstitutionally forced to choose between testifying at the sentencing hearing and risking self-incrimination at a criminal trial arising out of the same facts, we noted the applicability of the principle applied in *McGautha* :

A defendant at a criminal trial for a substantive offense may wish to speak in his own defense but refrain, fearing a subsequent conspiracy prosecution. The choice is a strategic one, within a setting which requires many strategic choices.

We would view the choice as less strategic were an adverse finding to be based on the fact of defendant's silence, rather than independent evidence, as here.

*Flint v. Mullen, supra,* 499 F.2d at 103.

The issue is not whether it is unconstitutional to force appellee to decide whether or not to testify in the disciplinary proceeding. The issue is whether he is unconstitutionally deprived of due process of law because he is forced to make that choice, or other choices, without the benefit of a lawyer in the face of a pending criminal case arising from the same facts that triggered the disciplinary proceeding.

We recognize, as did the district court, that most courts have declined to grant students the right to counsel in disciplinary proceedings. But, with the exception of *Nzuve v. Castleton State College,* 133 Vt. 225, 232, 335 A.2d 321, 326 (1975), and *Furutani v. Ewigleben,* 297 F.Supp. 1163 (N.D. Cal.1969), these cases did not involve the specter of a pending criminal case hovering over the hearing. *See e. g., Wasson v. Trowbridge, supra,* 382 F.2d 807; *Garshman v. Pennsylvania State University,* 395 F.Supp. 912; *Haynes v. Dallas County Junior College District,* 386 F.Supp. 208 (N.D. Tex.1974); *Barker v. Hardway,* 283 F.Supp. 228 (S.D.W.Va.), *cert. denied,* 394 U.S. 905, 89 S.Ct. 1009, 22 L.Ed.2d 217 (1969); *Due v. Florida A. & M. University,* 233 F.Supp. 396 (N.D.Fla.1963).

There are cases, however, holding that due process mandates the right to counsel at student expulsion proceedings. *Mills v. Board of Education of District of Columbia,*

348 F.Supp. 866, 881 (D.D.C.1972); *Givens v. Poe,* 346 F.Supp. 202, 209 (W.D.N.C. 1972); *Esteban v. Central Missouri State College,* 277 F.Supp. 649, 651 (W.D.Mo. 1967).[4]

Because of the lack of compelling precedent, we apply the traditional due process balancing test as delineated by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 334–335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976):

> More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*See also Board of Curators of University of Missouri v. Horowitz,* 435 U.S. 78, 99–100, 98 S.Ct. 948, 55 L.Ed.2d 124, 46 U.S. L.W. 4179, 4185 (1978); *Goldberg v. Kelly,* 397 U.S. 254, 263–271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

The private interest and risk of erroneous deprivation that will be affected by the refusal of the hearing board to allow appellee the assistance of counsel depend upon the choice made at the hearing. If appellee chooses not to risk self-incrimination, he risks loss of his college degree. If he chooses to protect his degree, he risks self-incrimination and possible imprisonment of up to twenty years.[5] All that appellee asks is that he be allowed the advice of counsel when he throws his college degree into the balance against a possible loss of liberty. Appellee has not asked that the hearing be postponed until after the criminal case has been tried; he is willing to participate in the hearing provided he is accompanied by

---

4. We are aware, of course, of those cases holding that prisoners in disciplinary proceedings are not allowed counsel. *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). We do not find those cases controlling because of two key distinguishing features: (1) the absence of pending criminal charges in those cases, and (2) the exceptional nature of the prison context. In *Baxter,* the Court specifically noted that "[n]o criminal proceedings are or were pending against Palmigiano." 425 U.S. at 317, 96 S.Ct. at 1557. The Court also observed that the "peculiar environment of the prison setting", *id.* at 322 n. 5, 96 S.Ct. at 1560, made inappropriate certain procedural requirements. We do not read *Palmigiano* or *Wolff* as applying to situations outside the prison walls. Indeed, the Court observed that "one cannot automatically apply procedural rules designed for free citizens in an open society, or for parolees or probationers under only limited restraints, to the very different situation presented by a disciplinary proceeding in a state prison." 418 U.S. at 560, 94 S.Ct. at 2977. Repeated references to the exigencies attending prison settings and the concomitant inappropriateness of applying inflexible due process standards are sprinkled throughout both *Palmigiano* and *Wolff.*

Cf. *Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), for an analysis by the Court of a situation where even a prisoner is entitled to counsel and the warning of his right to remain silent. *Mathis* involved a prisoner, incarcerated for one crime, who was interrogated by an I.R.S. agent concerning possible tax violations. As a result of the questioning, criminal charges were brought against the prisoner. The Court there held that, because the tax investigation was always colored by the possibility of a subsequent criminal prosecution, *Miranda* rights attached. The importance of *Mathis* is that it illustrates that, even within the prison setting, there are instances where the right to counsel is essential to ensure due process. The likelihood or pendency of criminal charges resulting from the interrogation presents such circumstances.

See also *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), for a discussion of the case-by-case approach to be taken in parole and probation revocation hearings on the issue of whether counsel should be permitted. "The need for counsel at revocation hearings derives, not from the invariable attributes of those hearings, but rather from the peculiarities of particular cases." *Id.* at 789, 93 S.Ct. at 1763. In making the analysis of whether counsel is required, the "touchstone" should be "fundamental fairness." *Id.* at 790, 93 S.Ct. at 1763.

5. R.I.Gen.Laws § 11–5–1 (1970).

counsel to advise and guide him. The role of his attorney could be analogized to that of counsel representing a client at a congressional investigative hearing. We echo the comments of the district judge:

> Further, the charge of assault with intent to rape is decidedly a matter of legal construction. Indeed, the definition of assault by itself, known and applied by legal professionals, is markedly different from the concept of laymen of what actions constitute an assault. The consequences of this plaintiff's participation in what otherwise might be strictly a University affair, reaches well beyond the University walls in terms of potential effect upon this plaintiff.

In *Flint v. Mullen, supra,* 499 F.2d 100, we found the convicted felon not to be presented with an unconstitutional choice because, *inter alia,* "[p]etitioner, however, was provided with counsel, and both petitioner and his counsel had full opportunity to cross-examine every adverse witness and could have called their own." *Id.* at 103. More recently, we reversed the enjoining of disciplinary proceedings against a physician until criminal charges arising out of the same actions were completed, finding: "The disciplinary proceeding was not brought solely to obtain evidence for the criminal prosecution; the doctor was aware during the hearing of the pending criminal actions; *the doctor had counsel* ; . . ." (emphasis added). *Arthurs v. Stern, supra,* 560 F.2d at 479 n.5. *See also United States v. Kordel, supra,* 397 U.S. at 12 n.25, n.27, 90 S.Ct. 763.

Appellee's need for an attorney at the hearing seems obvious. With the exception of the denial of counsel, the disciplinary proceedings are, in many respects, similar to that of a criminal trial. Only a lawyer is competent to cope with the demands of an adversary proceeding held against the backdrop of a pending criminal case involving the same set of facts. The risk involved in participation at the hearing is substantial with counsel present; without counsel, it is enormous. The presence of counsel will, of course, not remove all risks. It will, however, enable appellee to make an intelligent, informed choice between the risks presented.

Academic institutions have a significant interest in the promulgation of procedures for the resolution of student disciplinary problems. *Healy v. James,* 408 U.S. 169, 184, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972); *Wasson v. Trowbridge, supra,* 382 F.2d 807; *Dixon v. Alabama State Board of Education,* 294 F.2d 150 (5th Cir.), *cert. denied,* 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961); *Morales v. Grigel,* 422 F.Supp. 988, 997 (D.N.H.1976); *Furutani v. Ewigleben, supra,* 297 F.Supp. 1163. The limited role of counsel that we are considering, however, would not be very intrusive. Counsel would be present only to safeguard appellee's rights at the criminal proceeding,[6] not to affect the outcome of the disciplinary hearing. Counsel's principal functions would be to advise appellee whether he should answer questions and what he should not say so as to safeguard appellee from self-incrimination; and to observe the proceeding first-hand so as to be better prepared to deal with attempts to introduce evidence from the hearing at a later criminal proceeding.[7] To fulfill these functions, counsel need speak to no one but appellee. Counsel should, however, be available to consult with appellee at all stages of the hearing, especially while appellee is being questioned. Appellee, or his chosen U.R.I. counsel, will conduct the defense. The board will be conscious of the presence of an outsider, but this will emphasize the potential as well as present gravity of the charge. The presence of counsel will not place any financial or administrative burden on the University. It will set a precedent only for a truly unusual situation. *See Garshman v. Pennsylvania State University,* 395 F.Supp. 912 (M.D.Pa.1975). The

---

6. We note that this relief is designed to protect his rights to due process. He has no constitutional right to counsel *per se* in this context.

7. For example, the presence of counsel may help ensure accuracy as well as identify points of inconsistency.

most serious effect on the hearing of having counsel present that we can anticipate is that it will probably take longer to complete.

We hold that, because of the pending criminal case, the denial to appellee of the right to have a lawyer of his own choice consult with and advise him during the disciplinary hearing without participating further in such proceeding would deprive appellee of due process of law.

*The order of the district court as modified is affirmed.*

LEVIN H. CAMPBELL, Circuit Judge (dissenting).

As the court points out, the pendency of serious criminal charges against him could complicate appellee's defense at the University's disciplinary hearing, perhaps making the presence of counsel more valuable to him than in the ordinary disciplinary proceeding. Confronted with a similar situation involving prison disciplinary proceedings against convicts facing possible criminal charges arising out of the same incident, this court once held that the potential for self-incrimination required the presence of counsel to assist those convicts. *Palmigiano v. Baxter,* 487 F.2d 1280 (1st Cir. 1973), *vacated and remanded,* 418 U.S. 908, 94 S.Ct. 3200, 41 L.Ed.2d 1155 (1974), *reaffirmed,* 510 F.2d 534 (1st Cir. 1974). The Supreme Court disagreed, ruling

"[n]either *Miranda* [*v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)], nor *Mathis* [*v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968)], has any substantial bearing on the question whether counsel must be provided at '[p]rison disciplinary hearings [which] are not part of a criminal prosecution.' *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The Court has never held, and we decline to do so now, that the requirements of those cases

must be met to render pretrial statements admissible in other than criminal cases."

*Baxter v. Palmigiano,* 425 U.S. 308, 315, 96 S.Ct. 1551, 1556, 47 L.Ed.2d 810 (1976). After *Palmigiano,* I think we must accept that the pendency of criminal charges is irrelevant to the question of whether the due process clause allows a person to insist upon having counsel present at a separate civil proceeding involving similar facts. Although the Supreme Court's decision in *Palmigiano* drew upon its earlier ruling in *Wolff v. McDonnell,* another prisoner case, I do not see how its rationale can be meaningfully limited to prison disciplinary proceedings only. All the key factors present here were present there.* Because I believe that *Palmigiano* applies here, and also because like my brothers I am not prepared to rule that due process requires the presence of retained counsel at all or most student disciplinary proceedings, I am unable to join the opinion of the court.

Not only does the court's decision run counter to the most directly applicable Supreme Court precedent, but I fear that it opens the door to a claim of right to counsel in almost all student disciplinary proceedings. Although the court stresses this case "will set a precedent only for a truly unusual situation," *ante* at 106. I do not see how the right recognized here can be so easily confined. Most conduct of a serious enough nature to merit disciplinary action will involve at least colorable misdemeanors, if not felonies, and a student very well might contend that the fact that criminal charges may be brought, even if they are not pending, requires the presence of counsel at his hearing. Furthermore, I believe most of the benefits of the passive assistance of counsel, the only right involved in the court's decision, can be realized through consultations between the student and his counsel before the proceeding begins or perhaps by periodic consultations outside the

---

* Although, as my brothers note, no actual charges had been filed against Palmigiano, he had been advised that charges might be filed and the Supreme Court did not rely on the absence of actual charges in discussing his

right to counsel, but rather relied on the broader principle referred to above. The court referred to the fact that no charges were pending only in its discussion of Palmigiano's privilege against self-incrimination.

room while the hearing is in progress. For these reasons, I respectfully dissent.