## CIRCUIT COURT OF THE CITY OF FREDERICKSBURG

Robert Abrams

v.

Mary Washington College et al.

April 27, 1994

Case No. CH93–193

BY JUDGE WILLIAM H. LEDBETTER, JR.

In this case, a former college student who was suspended after a disciplinary board found that he had sexually assaulted another student seeks injunctive relief and monetary damages against the college and certain of its officials.

### Facts

According to the bill of complaint and the documents attached to it, the pertinent facts are as follows.

At all times relevant to this suit, Abrams was a student and dormitory "resident assistant" at Mary Washington College in Fredericksburg. (He is now a student at a college in Michigan.) The College is a state-supported institution organized under Virginia Code § 23–91.34 et seq.

In April 1992, College officials received a complaint of nonconsensual sexual contact between Abrams and a female student that allegedly occurred during the first week of that school year (specifically, on August 23 and 24, 1991). The campus police attempted to investigate, but no action was taken at that time because the alleged victim was

taking final exams and would leave for home immediately thereafter. However, Abrams' position as a resident assistant was terminated.

At the beginning of the next school year, Abrams was formally notified by the dean of students that he was the subject of a sexual assault complaint.

On September 10, 1992, the student conduct hearing board held a hearing pursuant to notice, heard witnesses, deliberated, and found the allegation to be true. Abrams' appeal to the president of the College was denied. As a result of the board's decision, Abrams was suspended for one year.

Later, information about the incident and the hearing reached the campus newspaper and, subsequently, the local general circulation newspaper. Abrams attributes to College officials some of the information contained in those articles.

## Pleadings

Abrams' bill contains five counts.

First, Abrams contends that the College violated his due process and equal protection rights. In support of that contention, he says that he was charged and tried under the College's "sexual assault policy" which was not adopted until after the alleged incident occurred; that he was charged and tried more than one year after the alleged incident in violation of college policy; that he was denied access to the "prosecution's witness list"; that he was tried for something ("sexual fraternization") that was never formally charged; that expert testimony about "rape trauma syndrome" surprised him; that an administrator-member of the board made "prejudicial statements concerning the veracity" of Abrams' account of the incident; that he was denied right to have legal counsel present at the hearing; that "exculpatory evidence" was destroyed; that he was not given "an impartial and complete" review on appeal; and that he was dismissed from his position as resident assistant without a "pre-deprivation" hearing.

The second count alleges breach of fiduciary duty. Abrams contends that College officials had a "special trust relationship" with him and that they breached that trust by divulging confidential matters (e.g., the board's hearing and Abrams' suspension), thereby causing "severe emotional distress and irreparable harm to his reputation."

Third, Abrams states in the form of a § 1983 action that the named College officials violated his right to privacy of educational records under 20 U.S.C. § 1232g (the so-called Buckley Amendment).

Fourth, Abrams asserts a number of breach of contract claims, alleging that College officials breached the terms of policies and procedures in the student handbook.

In his fifth count, Abrams asserts a claim for intentional infliction of emotional distress based on the College officials' disclosure of the incident to the press.

Abrams contends that he has been damaged by these wrongdoings and asks the court to make certain declarations under the declaratory judgment act; to enjoin the College from further disclosures about the incident and the disciplinary action; and for a monetary award, compensatory and punitive, totalling $975,000.00 plus attorney's fees.

In response, the College and the individual defendants filed a demurrer, plea of sovereign immunity, and a motion to dismiss as to all counts in the bill. Memoranda were filed. Arguments were heard on February 28, 1994. This opinion letter addresses all issues raised by the defendants' pleadings.

The dispositive issue at this stage of the case is whether Abrams' pleading states a cause of action. The court accepts as true all allegations in Abrams' bill and the attachments to it, as well as all reasonable inferences that may be fairly drawn from the allegations. It is axiomatic that at this juncture, the court does not evaluate and decide the merits of the case but, instead, determines the sufficiency of the plaintiff's pleadings.

### Constitutional Claims

Abrams alleges a number of facts, listed above, that he says support his contention that the College violated his due process and equal protection rights during the disciplinary proceedings. In response, the defendants contend that Abrams' allegations fail to state a basis on which the court could find a denial of constitutional rights associated with student disciplinary proceedings in a public institution.

It is settled that due process requires notice and opportunity to be heard before students at tax-supported colleges are expelled or suspended for misconduct. In defining "due process," the courts have focused on "fundamental principles of fairness" while rejecting the need to adhere to the judicial model of decision-making. A school is an

academic institution, not a courtroom. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Board of Curators v. Horowitz*, 435 U.S. 78 (1978); *Dixon v. Alabama Board of Education*, 294 F.2d 150 (5th Cir. 1961); *Henson v. Honor Committee of U. Va.*, 719 F.2d 69 (4th Cir. 1983).

Abrams' first constitutional claim is that he was charged and tried under the College's "sexual assault policy" that was adopted after the alleged incident occurred. The court acknowledges that, according to the bill, the incident for which Abrams was suspended occurred on August 23–24, 1991, and the College's "sexual assault policy" was adopted by the College's Board of Visitors on October 5, 1991. It does not follow that Abrams was "charged and tried under" that "policy." The policy, a copy of which is attached to the bill of complaint, is a two-paragraph statement that the College "will not tolerate sexual assault in any form . . . ." There is no reason to assume from the pleading and accompanying documents that the Board of Visitors' policy statement *created* a new form of misconduct that did not exist or was not recognized as inappropriate by the College prior to October 5, 1991. Common sense dictates that the College — any college — would not countenance nonconsensual sexual contact between members of the opposite sex and would treat such behavior as "misconduct" subject to established disciplinary proceedings, even without an explicit written "sexual assault policy." If it were otherwise, the bill does not allege it and there is nothing in the attachments to the bill from which such an improbability can be inferred. In fact, other allegations in the bill admit that the College treated sexual misconduct as behavior that was subject to discipline at the time the incident occurred.

Abrams' allegation that he was denied the right to have an attorney with him at the hearing does not state a constitutional claim. A student facing disciplinary charges for misconduct does not have a constitutional right to legal counsel at the hearing. *Gabrilowitz v. Newman*, 582 F.2d 100 (1st Cir. 1978).

Abrams' allegation that he was tried for something with which he was never formally charged is without merit. He had advance notice of the details of the complaint, the identity of his accuser, the time and place of the alleged incident, and various other specifics such that he was fully apprised of the charge. The label that one attaches to the behavior — e.g., "sexual assault," "sexual abuse," "sexual fraternization," etc. - is of no consequence, as long as the student has notice of the specific facts that form the basis of the alleged misconduct. That is

especially true where, as here, the alleged victim's account of the incident would establish, if true, an obvious deviation from societal norms and a violation of criminal law. The same would be true of any such egregious misconduct. If, for example, a student struck another student with a baseball bat, such behavior could be the subject of disciplinary proceedings, and those proceedings would not violate the student's constitutional rights if he were apprised of the facts asserted against him, regardless of the "label", if any, applied by the College to that form of misconduct.

Abrams' complaints about things that occurred at the hearing (a comment made by an administrator-member of the board that questioned the truthfulness of Abrams' version of the incidents, loss of a portion of the tape of the proceedings, presentation of evidence about "rape trauma syndrome") do not state a claim, singularly or collectively, of constitutional dimension.

Abrams' complaint about the appellate process is similarly inadequate. The student handbook, a copy of which accompanies the bill, provides a right of appeal to the College president but limits the appeal to specific issues. There is nothing to suggest that the president must personally review all of the evidence presented to the board and substitute his own judgment as to the weight of the evidence, nor does the handbook give the student a right to trial de novo. The bill admits that the College president reviewed the case and rejected the appeal. The fact that he may not have reviewed it as carefully or as fully as Abrams thinks proper is of no constitutional significance.

In sum, the court is of the opinion that the bill fails to state a violation of Abrams' constitutional rights. It is obvious from the pleading and the documents that accompany it that Abrams received advance notice of the complaint, including the name of the alleged victim, her account of the incident, and the exact time and place of the alleged incident; he was given the opportunity to select an "advisor" to assist him; he was given a full and fair hearing, which he attended after adequate notice; he was given the opportunity to question witnesses, explain his version of events, and otherwise defend himself; and he was given the opportunity to appeal consistent with the procedure stated in the student handbook. The procedure was fair and, in fact, exceeded the fundamental requirements enunciated in court decisions.

Further, the court agrees with the defendants that Abrams' constitutional claims are subject to the principle explained in *Fun v. V.M.I.*,

245 Va. 249 (1993). If the constitutional claims are based on unauthorized acts of officials in contravention of established procedures and adequate post-deprivation remedies exist, the constitutional claim cannot be maintained. Thus, here, Abrams' breach of contract action provides him with an adequate post-deprivation remedy.

### Breach of Fiduciary Duty

Abrams' second count, directed against the individual defendants, does not state a cause of action. As the defendants assert, there is nothing in the common law or statutes that creates an *in loco parentis* relationship or any other fiduciary relationship between senior college officials and every student attending that institution. There being no "special trust relationship" between the named college officials and Abrams under the facts alleged, Abrams' claim must fail.

### Family Educational Rights and Privacy Act

The College officials' disclosures of certain facts about the disciplinary proceeding violates Abrams' rights under the federal Family Educational Rights and Privacy Act (20 U.S.C. § 1232), Abrams contends, and he pursues his claim for relief pursuant to 42 U.S.C. § 1983.

First, the defendants argue that the Act ("FERPA") prohibits "a policy or practice" of releasing certain educational records, and because Abrams' bill alleges no such policy or practice, only a single incident, the bill states no cognizable claim. The court agrees. An isolated instance of alleged disclosure of information which may be a part of a student's records does not, without more, constitute a violation of FERPA. *See, e.g., Krebs v. Rutgers*, 797 F. Supp. 1246 (D. N.J. 1992); *Francois v. University of D. C.*, 788 F. Supp. 31 (D.C. Dist. Ct. 1992).

Second, the defendants argue that FERPA does not create a private cause of action. Decisional law is divided on this issue. This court is of the opinion that the better reasoned cases are those that hold that the remedy provided in the statute for vindication of the right created by the statute is exclusive. FERPA contains its own enforcement mechanisms and does not bestow upon individual students the right to pursue private actions for monetary damages under § 1983. Therefore, Abrams' FERPA claim does not lie.

Finally, the defendants argue that the College officials did not violate FERPA because it is plain from Abrams' own pleading, together

with the documents accompanying it, that Abrams himself disclosed disciplinary proceedings against him. The College officials later merely responded to inquiries from the press that were sparked by disclosures from Abrams and/or some other source. Further, it is obvious from the officials' quoted comments, set forth in copies of the newspaper articles attached to the bill, that they specifically declined to give details; instead, they simply confirmed what the inquirer already knew: that Abrams had been accused of sexual assault, had been the subject of disciplinary proceedings, and had been suspended from the College. From a complete reading of the press accounts, it is obvious that the basic information obtained by the press came from Abrams himself (who later tried to withdraw his permission for the press to use his comments, to no avail) or from other sources. Thus, in essence, the College officials *revealed* (made known something that was not known) nothing.

For all of these reasons, the court finds that Abrams' claim under FERPA fails to state a cause of action.

### Contract Claims

The fourth count enumerates eleven violations of the student handbook. Several of these "violations" are questionable because a reading of the entire bill, together with the accompanying documents, indicates that Abrams misread certain provisions in the handbook. That matter cannot be addressed at this juncture, however, because the defendants did not specify it as a basis for their demurrer. Virginia Code § 8.01–273. Instead, the defendants argue that these contract claims are barred because of Abrams' failure to follow the mandatory procedures for filing claims for breach of contract against Commonwealth agencies, institutions and officials. Abrams replies that he did comply with the statutory procedures in giving notice of his claims to the appropriate persons.

Whether Abrams complied with the statutory prerequisites for asserting a contract claim against the defendants is not a jury issue but a question for the court to decide. However, the court cannot decide the question on the basis of the pleadings. If, through discovery, all material undisputed facts can be developed, the court may be able to determine the issue without a hearing; otherwise, evidence regarding what kind of notice was given to whom and when must be presented ore tenus.

For the reasons explained, the defendants' demurrer to Count Four will be overruled and the motion to dismiss denied.

## Intentional Infliction of Emotional Distress

Abrams contends that the College officials' revelations to the news media caused severe emotional distress. He characterizes the remarks as "outrageous" and "offensive to the sensibilities of a reasonable person." Applying the four-prong test established in *Womack v. Eldridge*, 215 Va. 338 (1974), and measuring the alleged actions here against the standards enunciated in *Russo v. White*, 241 Va. 23 (1991), it is clear that the allegations, and all fair inferences that can be drawn from them, fall short of stating a cause of action for intentional infliction of emotional distress. Under the circumstances of this case, the officials' comments to the press were not, as a matter of law, "outrageous," "extreme," "beyond all bounds of decency," or "intolerable." Thus, the claim will be dismissed.

## Attorneys' Fees

Nothing in the bill that survives the defendants' demurrer provides a basis for an award of attorneys' fees. As the defendants observe, Virginia adheres to the "American Rule" that attorneys' fees are not ordinarily recoverable by a prevailing party in the absence of a specific statutory or contractual provision to the contrary. Because the case moves forward now only on Abrams' breach of contract claims, and no contractual provision for attorneys' fees appears among the pertinent documents attached to the bill, and the bill alleges no such contractual provision, the demurrer to attorneys' fees must be sustained.

## Conclusion

For the reasons explained, the defendants' demurrer will be sustained except as to the contract claims in Count Four of the bill. Because an amended pleading could not cure the deficiencies in Count One, Count Two, Count Three, and Count Five, those claims will be dismissed. The defendants will be allowed twenty-one days to file further response to the contract claims in Count Four.