Brian F. DONOHUE, Plaintiff,

v.

William J. BAKER, Daniel Kowalski, Kenneth E. Wing, Neil C. Brown, and Kelly A. Scott, Defendants.

No. 95–CV–0299.

United States District Court, N.D. New York.

Sept. 5, 1997.

Brian E. Donohue, Troy, NY, of counsel, for Plaintiff.

Dennis C. Vacco, Attorney General of the State of New York, Albany, NY (Mary Ellen Clerkin, Asst. Attorney General, of counsel),for Defendants Baker, Kowalski, Wing and Brown.

Bouck, Holloway, Kiernan & Casey, Albany, NY (Michael P. McDermott, of counsel), for Defendant Scott.

## MEMORANDUM–DECISION & ORDER

KAHN, District Judge.

### I. Introduction

On March 7, 1995, plaintiff filed a complaint in the above action pursuant to 42

U.S.C. § 1983 alleging that defendants William J. Baker ("Baker") and Daniel Kowalski ("Kowalski"), campus peace officers of the State University of New York at Cobleskill College ("SUNY Cobleskill"), violated his constitutional rights when they drafted a felony complaint charging plaintiff with Rape in the First Degree, obtained an arrest warrant, and arrested him on October 21, 1994. Plaintiff's complaint also alleges that defendants Kenneth Wing ("Wing"), President of SUNY Cobleskill, and Neil C. Brown ("Brown"), Vice President for Student Affairs of SUNY Cobleskill, violated his Fourteenth Amendment right to procedural due process at a disciplinary hearing which resulted in his dismissal from SUNY Cobleskill College. The complaint also pleads a pendent claim for common law false arrest against defendants Baker, Kowalski and Kelly A. Scott ("Scott"). A common law claim for malicious prosecution is also pleaded against defendants Baker and Scott.

Presently, all defendants move for summary judgment pursuant to Fed.R.Civ.P. 56(c).

## II. Background

### A. The Alleged Rape and Subsequent Arrest and Prosecution

During October 1994 the plaintiff and Scott were both students at SUNY Cobleskill. They first met in the early morning hours of October 21, 1994 at a local bar. At about 3:00 a.m. Scott voluntarily accompanied plaintiff back to his dormitory room. It is undisputed that plaintiff and Scott had sexual intercourse while in plaintiff's dormitory room. During the events in the dormitory room, plaintiff's roommate and a female companion were also present in a separate bed.

After her sexual encounter with plaintiff, Scott appeared at the campus public safety office, with friends, trembling and sobbing, and told Baker and Kowalski that plaintiff had made her have sex with him that morning despite the fact that she said "no" to him several times. Baker Dep. at 87–90. Officer Baker then took Scott to the hospital for examination and treatment at which time Scott prepared a sworn written deposition while at the hospital. Baker Dep. at 19, 27.

In her written deposition, Scott stated that she "told [plaintiff] & emphasized—I am not having sex with you! Numerous times I told him that!" Kowalski Aff., Ex. B. She further stated that prior to intercourse, she felt pain when the plaintiff touched her in the vaginal region and wrapped his leg around her. Id. Then, according to her statement, "he put himself on me & before I knew it he inserted his penis into me and obviously I was in a state of shock." Id. According to Officer Baker, Scott stated that "she wanted [plaintiff] arrested." Baker Dep. at 102–3. However, there is no evidence that defendant Scott ever used the words "rape" or "physical force" in describing her sexual encounter with plaintiff to Officers Baker and Kowalski. Id. at 87–89, 110–23.

While at the hospital, the officers also took sworn statements from two other students, Alec Taylor and Sara Mowrey, who had seen Scott before and after the incident. Notably, in their statements both students stated that Scott used the word "rape" in describing what had happened. Kowalski Aff., Exs. A & C.

Officers Baker and Kowalski next proceeded to plaintiff's dormitory room and after requesting and receiving permission to do so, the officers searched the room and removed certain items as physical evidence. Subsequently, the officers persuaded plaintiff and his roommate to consent to taped interviews at the public safety office. Kowalski Dep. at 49–52. During the interview, plaintiff admitted that Scott had said "no" to sexual intercourse several times, although it was his belief that she had changed her mind prior to the act. Kowalski Aff., Ex. D at 35. Plaintiff further acknowledged that prior to intercourse, Scott was sobbing and "sounded like a little upset." Id. at 15. Further inquiry by the officers led to plaintiff recalling that Scott had told him that she had almost been raped twice. Id. at 16. Ultimately, plaintiff told the officers that Scott was the aggressor when she "grabbed [plaintiff's] penis and tried to put in into her vagina ... [while the plaintiff] helped her get it in there." Id. at 19.

After the interviews, Baker and Kowalski consulted with the Director of Public Safety,

William Mercier. The three of them agreed that they had probable cause to charge plaintiff with Rape in the First Degree. Kowalski Aff. ¶ 21.

Officer Baker then prepared a felony complaint, charging plaintiff with Rape in the First Degree. This was submitted along with Ms. Scott's supporting deposition to the local town justice in order to obtain a warrant for plaintiff's arrest. Kowalski Dep. at 56; Baker Dep. at 74. A warrant was issued and plaintiff was arrested and arraigned on October 21, 1994, and brought to the Schoharie County Jail, where he was held in lieu of bail, until the preliminary hearing on October 27, 1994.

According to plaintiff's attorney, at the conclusion of the preliminary hearing the charge of Rape in the First Degree was "reduced" by the village court to misdemeanor sexual misconduct.[1] Donohue Aff. ¶ 37–38; Dkt. No. 33. According to the plaintiff's complaint, "[o]n February 7, 1995, upon motion of the plaintiff's attorney, the Village Court dismissed, with prejudice, the charge of sexual misconduct by reason of the absence of any allegation or evidence of forcible compulsion." Cmplt. ¶ 33. After plaintiff commenced the instant action, three new charges were instituted against him by the Schoharie County District Attorney on prosecutor's information: (1) Sexual Abuse in the Third Degree; (2) False Imprisonment in the Second Degree; and (3) Menacing. Klein Aff. ¶ 2. Plaintiff's motion to dismiss these charges has been pending since May 2, 1995.

In connection with the rape arrest, plaintiff alleges that defendants Baker and Kowalski filed a false rape charge; illegally applied for a warrant; falsely arrested him; maliciously prosecuted him; and "intentionally, recklessly, willfully, maliciously and/or with deliberate indifference and callous disregard of the plaintiff's rights, privileges and immunities guaranteed to him by the First, Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution." Compl. ¶ 38. Plaintiff seeks compensatory and punitive damages against defendants Baker and Kowalski.

## B. The SUNY Cobleskill Disciplinary Hearing

On October 24, 1994 defendant Brown sent a letter to plaintiff advising him that he was being placed upon immediate temporary suspension due to the criminal charges that were pending against him. This letter also warned plaintiff that he faced charges to be brought under the SUNY Cobleskill Student Conduct Code (the "Conduct Code").

On October 28, 1994, Scott filed formal charges with Brown's office charging plaintiff with violating the Conduct Code. In particular, Scott charged the plaintiff with violating Rules 7 and 11(b) of the Conduct Code. According to the Conduct Code's preamble, any violation of its provisions can result in "disciplinary action ranging from a warning letter to probation, suspension, or dismissal for the College." Brown Aff., Ex. A. Rule 7 of the Conduct Code provides that it is a "Major Infraction" of the Conduct Code to be guilty of "[c]onduct which threatens or endangers the health or safety of any person." *Id.* Rule 11(b) provides that it is also a "Major Infraction" of the Conduct Code to be guilty of "[s]exual misconduct or lewd, indecent, or obscene conduct or expression on College-owned or controlled property or at College-sponsored or supervised functions." *Id.*

Plaintiff's parents were given telephone notice of Scott's charges on the same day they were filed. During that telephone conference, plaintiff's parents agreed to a hearing date and time of November 1, 1994 at 4:15 p.m. On October 31, 1994 a "Letter of Summons" containing the charges and noting the time of the hearing was hand-delivered to plaintiff's father.

A four-member panel consisting of faculty members was convened to preside over the hearing. Plaintiff's counsel, Brian E. Donohue (no relation to plaintiff) sought to represent the plaintiff in the proceedings, but this request was denied. Donohue Aff., ¶¶ 43–44,

---

1. According to the District Attorney of Schoharie County, the rape charge was dismissed on October 27, 1994. Klein Aff. ¶ 4. The District Attorney, does not elaborate on the nature of the dismissal.

Dkt. No. 41. Plaintiff was, however, given an advisor.[2]

Prior to the commencement of the proceedings, Scott her advisor, and her parents were led to one office. Plaintiff, his advisor, and his parents were led to a separate office. Brown met with each side individually and explained the nature of the proceedings. Upon entering the hearing room, the parties were seated at opposite ends of the room, facing the hearing panel and not each other. The panel's Chief Magistrate also directed that Scott and the plaintiff should only address the panel and not each other due to the sensitive nature of the charges. Plaintiff did not then raise an objection to this change from ordinary Conduct Code procedure which permits the student charged with the opportunity to question all witnesses. Brown Aff., ¶ 26. Thereafter, each student presented the panel with oral testimony regarding the events at issue. After an initial round of testimony, the panel permitted each student to return individually to give a follow-up statement.

Upon the conclusion of the hearing, the panel deliberated and found the plaintiff guilty as charged. Plaintiff was ordered dismissed from the school, effective November 3, 1994 at 5:00 p.m. Plaintiff appealed the panel's determination administratively and the decision was upheld. However, by letter dated November 21, 1994, defendant Wing modified the penalty imposed to one of suspension for two years. Plaintiff thereafter commenced a proceeding in New York State Supreme Court pursuant to Article 78 of the New York Civil Practice Law and Rules to challenge his suspension. The state court annulled the panel's determination and directed that another hearing be held. The state court further ordered that the October 21, 1994 incident be expunged from plaintiff's school records. Plaintiff did not ever seek to have this new hearing held since he had apparently lost interest in attending SUNY Cobleskill.

With respect to the SUNY Cobleskill hearing and suspension, plaintiff alleges that "[t]he actions of Brown and Wing in depriving him of his fundamental constitutional rights were committed intentionally, recklessly, willfully, maliciously, negligently and/or with deliberate indifference and callous disregard of the plaintiff's rights, privileges and immunities guaranteed to him by the First, Fifth and Fourteenth Amendments of the United States Constitution." Compl. ¶ 53. In particular, plaintiff contends that the hearing was defective due to (1) the inadequate one-day notice he was given; (2) the lack of legal representation; and (3) the lack of an opportunity to cross-examine defendant Scott. Pl's. Mem. at 22–23. In his complaint, plaintiff seeks compensatory and punitive damages as a result of this alleged due process violation.

### C. The Instant Motions

On this motion, defendants Baker and Kowalski argue that their actions were at all times supported by probable cause and that, in any event, they contend that they are entitled to qualified immunity. Defendants Brown and Wing assert that plaintiff received all of the legal process that was due at his disciplinary hearing. Defendant Scott argues that plaintiff's false arrest claim should be dismissed as to her because she did not participate in his arrest. She seeks the dismissal of the malicious prosecution claim on the ground that plaintiff cannot demonstrate that the criminal proceedings have terminated in his favor.

### III. Discussion

#### A. Summary Judgment Standard

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding such a motion, the Court is not to resolve disputed issues of fact, but rather, is to assess whether a genuine issue regarding

---

**2.** Whether this individual was a faculty or student advisor is not clear from the record. *See* Brown Aff. ¶ 22.

a material fact remains for the trier of fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Summary judgment may be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "When reviewing the evidence, the court must 'assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor.'" *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 57 (2d Cir.1997) (quoting *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990)). A non-movant who bears the ultimate burden of proof, however, must demonstrate that there is some evidence which would create a genuine issue of material fact. *See Twin Laboratories, Inc. v. Weider Health and Fitness,* 900 F.2d 566, 568 (2d Cir.1990). This evidence cannot consist of "conclusory allegations," *id.,* or "mere speculation," *Howard v. Gleason Corp.,* 901 F.2d 1154, 1159 (2d Cir. 1990), but must rather be something more than a "scintilla of evidence", *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512, and more than "some metaphysical doubt as to the material facts". *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## B. Elements of a 42 U.S.C. § 1983 Claim

■ In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a right, privilege, or immunity secured by the United States Constitution or the laws or treaties of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). There is no issue that the defendants charged in the complaint with violating § 1983 are state actors. The issue on this motion is whether a material issue of fact is present with respect to the constitutional deprivations alleged in the complaint.

### 1. The § 1983 False Arrest Claim

■ A false arrest by a state actor implicates a person's Fourth Amendment rights and may raise a cognizable claim under § 1983. *Cook v. Sheldon,* 41 F.3d 73, 77 (2d Cir.1994).[3] A § 1983 false arrest claim requires plaintiff to show that 1) defendants intentionally arrested him; 2) plaintiff was aware of the arrest; 3) the arrest was not consented to; and 4) the arrest was not supported by probable cause. *See, e.g., Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995) (noting that " '[t]he elements of a claim of false arrest under [section] 1983 are substantially the same as the elements of a false arrest claim under New York law' ") (quoting *Hygh v. Jacobs,* 961 F.2d 359, 366 (2d Cir.1992)). There is no question that plaintiff was subjected to a seizure of constitutional proportions. The question is thus whether the officers had probable cause to make the arrest. Probable cause exists if the officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991), *cert. denied,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). "Courts evaluating probable cause for an arrest must consider those facts available to the officer at the time of the arrest and immediately before it." *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 569 (2d Cir.1996).

### (a) Qualified Immunity

■ "Government actors performing discretionary functions are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2737–38, 73

**3.** It is noted that the plaintiff does not suggest how his constitutional rights, other than those protected by the Fourth Amendment, were infringed by the defendant officers' conduct. The Court therefore presumes that the plaintiff is proceeding on a Fourth Amendment theory.

L.Ed.2d 396 (1982)).[4] Thus, even if probable cause is found not to exist, the defendant officers will have qualified immunity with respect to plaintiff's claims if it was "objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Lennon,* 66 F.3d at 423–24 (quoting *Wachtler v. County of Herkimer,* 35 F.3d 77, 80 (2d Cir.1994) (in turn quoting *Golino,* 950 F.2d at 870)).

Officers Baker and Kowalski assert that they had probable cause to make the arrest because a valid arrest warrant had been issued by the local town justice. Alternatively, these defendants argue that they are entitled to qualified immunity with respect to plaintiff's claims. Since the plaintiff contends that the warrant was invalid because it was obtained through the misrepresentations of the defendant officers, the Court will analyze the issue of probable cause together with the broader question of qualified immunity.

Plaintiff generally alleges that Baker, assisted by Kowalski, submitted a felony complaint which was either deliberately perjurious, or made in reckless regard of the truth, and that therefore, the "arrest was made without probable cause, privilege or other justification." Compl. ¶¶ 21–23. In support of this claim, plaintiff relies on the fact that defendant Scott never used the words "rape" or "forcible compulsion" in her interviews with officers Baker and Kowalski, and of the fact that the first degree rape charge was dropped after the preliminary hearing. Plaintiff maintains the charge was dismissed for lack of any evidence of forcible compulsion.

■ "Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause." *Golino,* 950 F.2d at 870 (citing *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)). However, as noted above, the plaintiff here contends that the warrant was a product of Baker and Kowalski's alleged deception of the issuing court. To challenge the validity of a warrant, "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof . . . . [a]llegations of negligence or innocent mistake are insufficient." *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978) (issuance of search warrant).

■ The record does not support a finding of perjury on the part of the defendant officers when they obtained the arrest warrant. Baker and Kowalski presented the facts to the town justice as they believed them to be, supported by Scott's written deposition. The issue is thus not one of "perjury" as the plaintiff frames it. Rather, the dispositive issue is whether probable cause existed, and if not, whether it was objectively reasonable for officers Baker and Kowalski to believe that they had probable cause to arrest the plaintiff for rape.

Under the relevant part of § 130.35 of the New York Penal Law, "[a] male is guilty of rape in the first degree when he engages in sexual intercourse with a female: (1) By forcible compulsion . . ." N.Y. Penal Law § 130.35 (McKinney 1987). Section 130.00(8) of the New York Penal Law defines the term "forcible compulsion" as meaning to compel by either: (a) use of physical force; or (b) a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person, or in fear that he, she or another person will immediately be kidnapped. N.Y. Penal Law § 130.00(8) (McKinney 1987).

When the two officers met Scott, she appeared at the public safety office accompanied by friends and was exhibiting highly agitated occasionally hysterical behavior. Sobbing and trembling, she told the officers that she had told plaintiff repeatedly that she would not have sex with him but "that he made her do it anyway", notwithstanding her

---

4. The defendants do not dispute that plaintiff's right to be free from arrest and prosecution without probable cause was clearly established at the time of the incident. *See Lowth,* 82 F.3d at 569.

refusal. Baker Dep. at 19. The depositions of defendants Baker and Kowalski demonstrate that defendant Scott effectively communicated her belief that she was a crime victim. Defendant Baker's deposition testimony establishes that he discussed with Scott the possible charges which might be brought against plaintiff, including the first degree rape charge, and she gave him no indication that the element of forcible compulsion was absent. Baker Dep. at 102–04. Scott's written statement, indicating that plaintiff had subjected her to pain prior to the act of intercourse and that she had adamantly refused to engage in intercourse with the plaintiff further corroborated what the officers heard and observed. The officers also had in their possession sworn statements from two other students who related that Scott had said she had been raped. The Court cannot agree with plaintiff that Baker's use of the term "forcible compulsion" in the felony complaint was a "bald-faced lie." Pl's Mem. at 13. Although it would have perhaps been appropriate for the officers to ask Scott directly whether physical force or a threat was employed by plaintiff, this omission does not rise to the level of reckless disregard of the truth in light of the officers' desire to question Scott in a neutral manner so as to not elicit a prompted response. *See* Brown Dep. at 112–114. While the Court observes that defendant Scott's sworn written deposition is somewhat ambiguous on the question of forcible compulsion, it does state that plaintiff "put himself on [Scott]" immediately prior to intercourse and that "before [Scott] knew it [plaintiff] inserted his penis into [Scott]", which suggests the use of physical force to accomplish intercourse. Kowalski Aff., Ex. B. The two officers were also justified in not crediting plaintiff's version of the events because his answers reasonably appeared to be self-serving and, at times, equivocal.

Accordingly, plaintiff's contention that the warrant was procured through the misrepresentations of the defendants is without merit. Furthermore, in considering the information available to the officers at the time of the arrest, the Court finds that they had probable cause as a matter of law to believe that plaintiff had committed the offense of rape.

Alternatively, and at a minimum, reasonable officers could have disagreed as to the existence of probable cause in this instance and defendants are thus entitled to qualified immunity with respect to the charge of false arrest. *Lennon,* 66 F.3d at 420.

### 2. The § 1983 Malicious Prosecution Claim

■ When a district court is presented with a claim of malicious prosecution, there are two areas of necessary inquiry. *Singer,* 63 F.3d at 116. The first question to be answered is whether the defendants' conduct was tortious under common law principles. *Id.* The second question is whether "the plaintiff's injuries were caused by [a] deprivation of liberty guaranteed by the Fourth Amendment." *Id.*

■ "The elements of the tort of malicious prosecution are: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *See Broughton v. New York,* 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975). Provided these elements can be satisfied, a plaintiff must then "show a violation of his rights under the Fourth Amendment." *Murphy v. Lynn,* 118 F.3d 938, 944 (2d Cir.1997) (citing *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)). "The Fourth Amendment right implicated in a malicious prosecution is the right to be free of unreasonable seizure of the person—i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty." *Singer,* 63 F.3d at 116. In a case where "the accused is physically detained following arraignment, there can be no question that he has been seized within the meaning of the Fourth Amendment." *Murphy,* 118 F.3d at 944.

Since it requires little discussion, the constitutional aspect of plaintiff's malicious prosecution claim will be addressed first. It is clear that plaintiff suffered a "deprivation of liberty consistent with the concept of 'seizure' " when he was detained at the Schohar-

ie County Jail following his arraignment. *Singer*, 63 F.3d at 116. Thus, provided he can satisfy the common law elements of the claim, he may seek recovery under § 1983 on a malicious prosecution theory.

Turning to the common law elements of plaintiff's claim, the first element is established by the defendants' filing of the felony complaint and plaintiff's subsequent arraignment on those charges. Defendants dispute that this charge was terminated in plaintiff's favor. "A plaintiff alleging the constitutional tort of malicious prosecution in an action pursuant to § 1983 must establish termination of the prosecution in his favor in accordance with applicable state law." *Hygh*, 961 F.2d at 366. The proceedings resulting in that charge being dismissed were not recorded but it appears that the reason for the dismissal was a lack of evidence of forcible compulsion. For the purposes of the analysis of the defendant officers' motion, it will be assumed that the plaintiff has met his burden on this element. Plaintiff's claim, however, fails with respect to the requirement that he show that the proceedings were initiated without probable cause. As noted in the Court's discussion of plaintiff's false claim, the defendant officers had probable cause to commence the proceedings. Furthermore, it was objectively reasonable for Baker and Kowalski to believe that probable cause existed to file a complaint and seek the plaintiff's arrest on the charge of Rape in the First Degree. Thus, defendants are likewise entitled to summary judgment on the malicious prosecution claim due to the presence of probable cause and, alternatively, on qualified immunity grounds.[5]

### C. The Due Process Claim Against Defendants Brown and Wing

The defendants do not quarrel with the notion that plaintiff was entitled to due process when he was faced with the prospect of expulsion from college on the charges leveled against him by defendant Scott. It is well settled that an expulsion from college is a stigmatizing event which implicates a student's protected liberty interest. *Albert v. Carovano*, 824 F.2d 1333, 1339 n. 6 (2d Cir.1987), *rehearing granted and modified on other grounds*, 839 F.2d 871, *rehearing en banc and vacated on other grounds*, 851 F.2d 561 (1988). Indeed, in *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), in connection with a ten-day suspension from a public high school, the Supreme Court held that the student was entitled to "be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581, 95 S.Ct. at 740. As in all cases involving an alleged deprivation of due process, the difficult question for the court is determining precisely what process was due. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). The concept of due process is, of necessity, a flexible one. *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 86, 98 S.Ct. 948, 953, 55 L.Ed.2d 124 (1978). Bearing this mind, the Court will now turn to plaintiff's claims that the timing of the notice was improper; that he was improperly denied a right to be represented by counsel; and that he was improperly denied the opportunity to cross-examine defendant Scott.

### 1. Notice—Timing

From a review of the record, it appears that plaintiff, through his parents, had telephonic notice of the charges at least three days prior to the hearing. Written notice of the charges was received just one day before the hearing, although the October 24, 1994 letter from defendant Brown did, however, warn plaintiff that charges were forthcoming and that the major infractions involved were those numbered 7 and 11(b) under the Conduct Code. The timing of the

---

**5.** The Court's finding of probable cause, or alternatively, that the defendant officers are entitled to qualified immunity, also requires the dismissal of the plaintiff's common law false arrest and malicious prosecution claims as to these defendants. *Simpkin v. City of Troy*, 224 A.D.2d 897, 898, 638 N.Y.S.2d 231 (N.Y.App.Div.1996).

notice plaintiff received will comport with due process if it "is reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Memphis Light, Gas and Water Div. v. Craft,* 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978) (quoting *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). It would seem that the notice given to the plaintiff here was sufficient given the nature of the underlying factual circumstances. Unlike other conduct that might constitute an infraction of the Conduct Code, the determination of whether sexual misconduct occurred here largely turned on the credibility of Scott and the plaintiff. However, this question need not be determined since the only evidence in the record demonstrates that the plaintiff and his parents agreed, if not demanded, that the hearing be held on November 1, 1994. That being the case, plaintiff will be deemed to have "waived objections in this forum to any constitutional infirmity in the timing of the notice and hearing." *Nash v. Auburn Univ.,* 812 F.2d 655, 661 (11th Cir.1987). Defendants are, therefore, entitled to summary judgment with respect to this aspect of the plaintiff's due process claim.

### 2. Right to Counsel

The Second Circuit has never recognized any absolute right to counsel in school disciplinary proceedings. *See e.g. Wasson v. Trowbridge,* 382 F.2d 807, 812 (2d Cir.1967) (no right to counsel where hearing was investigative, school did not proceed through counsel, and individual was otherwise able to defend himself). In support of his claim here, the plaintiff relies on the First Circuit's opinion in *Gabrilowitz v. Newman,* 582 F.2d 100 (1st Cir.1978), where the court found that the plaintiff student had been deprived of due process when he was denied a lawyer of his choice with whom to consult with and to be advised by when the disciplinary charges were also the subject of pending criminal charges. *Id.* at 101–02. The *Gabrilowitz* court was concerned with the effect of the student's student's voluntary statements on his Fifth Amendment right against self-in-

crimination. *Id.* at 103. In view of the peril faced by the student, the court found that a limited role for counsel was necessary, "only to safeguard [the student's] rights at the hearing, *not to affect the outcome of the hearing.*" *Id.* at 106 (emphasis added). The instant case, although factually similar to *Gabrilowitz,* raises a different claim with respect to the right to counsel. Plaintiff desired counsel not to protect him from any Fifth Amendment jeopardy, but to enable him to prevail at the disciplinary hearing. As put by Plaintiff's counsel, "[h]ad Mr. Donohue been able to cross-examine Ms. Scott with the assistance of his attorney, the Judicial Board might very well have been swayed as was Judge Walker at the Village Court." Pl's Mem. at 23. Plaintiff thus claims that he was denied due process because the defendants prevented him from using his attorney as a sword to challenge Scott's credibility, rather than as a shield to protect his Fifth Amendment rights. The limited holding of *Gabrilowitz* does not support this proposition and is thus distinguishable. 582 F.2d at 106. In the absence of any claim of prejudice to plaintiff's Fifth Amendment rights, the defendants' denial of plaintiff's request for assistance of counsel did not infringe upon his due process rights. This aspect of plaintiff's due process must, therefore, also be dismissed.

### 3. Right to Cross–Examination

The exact nature of the statements made during the disciplinary hearing cannot be known, as the proceedings were not recorded. The only description of the nature of the proceedings in the record is presented in the affidavit of defendant Brown. However, it is clear that the Chief Magistrate dispensed with any opportunity the plaintiff might have had to directly question Scott, due to "the extremely sensitive nature of the charges." Brown Aff. ¶ 25. The Student Conduct Code did provide that students charged under its provisions had the right to question any witnesses as well as the person bringing the charge. Brown Aff., Ex. A at 49. However, defendant Brown relies on his authority under the Conduct Code to make exceptions to the Conduct Code's procedures "based upon

very sensitive situations." Brown Aff., Ex. A at 50. It is understandable that the panel would wish to alter the proceedings in an effort to protect the alleged victim from additional trauma. However, this concern, and the presence of provisions in the Conduct Code permitting the Vice President for Student Affairs to dispense with cross-examination, does not end this Court's inquiry into the fundamental fairness of the hearing. Regardless of how "sensitive" the proceeding was deemed to be, the defendants remained bound to observe the plaintiff's constitutional rights.

Returning to the issue at hand, the Court notes that "[t]he right to cross-examine witnesses has not been considered an essential requirement of due process in school disciplinary proceedings." *Winnick v. Manning*, 460 F.2d 545, 549 (2d Cir.1972); *see also Dixon v. Alabama State Bd. of Educ.*, 294 F.2d 150, 159 (5th Cir.), *cert. denied*, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961). However, if a case is essentially one of credibility, the "cross-examination of witnesses might [be] essential to a fair hearing." *Winnick*, 460 F.2d at 550. In the instant case, the disciplinary hearing became a test of the credibility of plaintiff's testimony versus the testimony of defendant Scott. From the record, it appears that the only evidence that was before the panel came in the form of Scott's two statements alleging sexual misconduct and the plaintiff's two statements denying the same. Indeed, the record reveals that the panel was reticent about even permitting plaintiff the opportunity to make a second statement.

▆▆▆▆ The opportunity to make two statements to a disciplinary panel might suffice in the case of alleged misconduct that could result in a short suspension from school. *Goss*, 419 U.S. at 583–84, 95 S.Ct. at 740–41. But the plaintiff here faced expul-

sion and procedures necessarily had to take on a higher level of formality to ensure fairness. *See id.* At the very least, in light of the disputed nature of the facts and the importance of witness credibility in this case, due process required that the panel permit the plaintiff to hear all evidence against him and to direct questions to his accuser through the panel. *See Nash*, 812 F.2d at 662. It is not clear from the record that plaintiff was afforded this opportunity. It is also not clear that this opportunity was affirmatively denied by the panel, either.[6] In sum, it is apparent that defendants Brown and Wing have not demonstrated their entitlement to summary judgment as a matter of law on this claim.[7]

## D. Common Law Claims Against Defendant Scott

### 1. False Arrest

▆▆▆▆ Defendant Scott urges that she may not be held liable to the plaintiff for false arrest because she did not participate in the arrest. Plaintiff contends that she instigated the arrest and may thus be held liable. A "complainant is not liable in civil liability for false arrest unless he affirmatively induces the police officer to act." *Cobb v. Willis*, 208 A.D.2d 1155, 1156, 617 N.Y.S.2d 601 (N.Y.App.Div.1994). Merely providing police officers with information without other participation in the arrest is an insufficient basis for liability. *Id.* There is no question that defendant Scott did not actually participate in plaintiff's arrest. At most, she stated to defendant Baker that she wanted the plaintiff to be arrested. The question for the Court is whether this statement induced Officer Baker to arrest the plaintiff, or more particularly, whether an issue of fact is raised by this statement. In viewing the evidence in a light most favorable to the non-

---

6. Plaintiff has submitted no affidavit that might shed light on the issue. His attorney, by affirmation, merely states without elaboration that "Mr. Donohue was not permitted to cross-examine Ms. Scott at the hearing." Donohue Aff. ¶ 45. This is not the same as being prohibited from posing questions to Scott through the medium of the panel. Due to the state of the record, the resolution of this question must await further development at trial.

7. Defendants Brown and Wing also assert that they are entitled to qualified immunity with respect to this claim. However, since that argument was raised for the first time in their reply brief, the Court declines to address the issue at this time.

movant, it cannot be said that this statement affirmatively induced Officer Baker to make the arrest. Officer Baker did not effectuate plaintiff's arrest immediately following defendant's Scott's request that he be arrested. Nor was the plaintiff arrested when he subsequently appeared at the campus Public Safety office to be interviewed by the officers. Baker Dep. at 56. Indeed, it was not until after Officer Baker interviewed the plaintiff and his roommate that he believed he had probable cause to charge him with forcible rape. Baker Aff. ¶ 21. Even at that point Officer Baker did not place the plaintiff under arrest but instead presented the matter to the town justice for the issuance of a judicial arrest warrant. Baker Dep. at 117. This being the case, plaintiff cannot demonstrate that it was Scott's demand for his arrest that caused Officer Baker to make the arrest. Accordingly, defendant Scott is entitled to summary judgment with respect to plaintiff's false arrest claim.

### 2. Malicious Prosecution

Defendant Scott argues that plaintiff cannot establish a prima facie case of malicious prosecution because he cannot establish that the underlying criminal proceedings were terminated in his favor. Defendant notes that the charges instituted by the Schoharie County District Attorney against the plaintiff for Sexual Abuse in the Third Degree; False Imprisonment in the Second Degree; and Menacing are still pending. Plaintiff argues that he established this element because the rape charge and subsequent sexual misconduct charge were dismissed for lack of evidence of forcible compulsion.

The nature of the village court's dismissal of the rape and sexual misconduct charges cannot be ascertained with absolute certainty from the record. There is no order of dismissal or transcript of the court's ruling. The only evidence in the record is presented by the affirmation of plaintiff's attorney who states that the rape charge was "reduced" by the village court to sexual misconduct because no evidence of a forcible sexual encounter were elicited at the preliminary hearing. Donohue Aff. ¶¶ 35–37. Further, plaintiff's attorney affirms that the "sexual misconduct

charge was also eventually dismissed on the ground that it, too, required evidence of forcible compulsion." Id. at ¶ 38. In his affidavit, the Schoharie District Attorney only confirms that the rape charge was dismissed on October 27, 1994.

If the plaintiff here had been acquitted of the rape charged, the issue here would be a simple one. That, however, is not the case and "[w]hen a termination is indecisive because it does not address the merits of the charge, the facts surrounding the termination must be examined to determine 'whether the failure to proceed implies a lack of reasonable grounds for prosecution.'" Janetka v. Dabe, 892 F.2d 187, 189 (2d Cir. 1989) (quoting Conway v. Village of Mount Kisco, 750 F.2d 205, 215 (2d Cir.1984)). The only evidence present in the record (which is scant) indicates that the rape and sexual misconduct charges were dismissed because the prosecution could not provide any evidence of forcible compulsion, an element of these offenses. Since the prosecution was unable to prove an element of these offenses, the dismissal of the rape and sexual misconduct charge can be said to address the merits of the prosecution's case. This dismissal is thus a sufficient predicate upon which to found a claim for malicious prosecution.

Defendant Scott's argument that the pendency of the three lesser charges prevents the maintenance of an action for malicious prosecution is misplaced. It is true that there are criminal charges pending against the plaintiff relating to conduct for which he had previously been charged in the rape complaint. However, it also remains true that the rape charge and the sexual misconduct charge have been dismissed. The question of whether the now dismissed charges were maliciously instituted is not affected by the subsequent prosecutions. As the Second Circuit noted, the purpose of the favorable termination requirement is to prevent inconsistent judgments. Janetka, 892 F.2d at 189. That concern is not implicated by the fact that there are pending lesser charges relating to the same conduct that provided the foundation for the dismissed charges. By way of illustration, it would not be inconsistent to find that the defendant Scott mali-

ciously instigated a rape prosecution while the plaintiff is in fact guilty of the crime of false imprisonment. Thus, the mere pendency of the three charges subsequently filed by the Schoharie County District Attorney does not vitiate the plaintiff's showing that the criminal proceedings have been terminated in his favor. Accordingly, defendant Scott has not demonstrated her entitlement to summary judgment with respect to this claim.[8]

### IV. Conclusion

For the foregoing reasons, it is hereby

ORDERED that the motions for summary judgment made by defendants Baker, Kowalski are GRANTED and the Complaint is DISMISSED as to those defendants; and it is further

ORDERED that the motion for summary judgment made by defendant Scott is GRANTED IN PART and DENIED IN PART in that the cause of action for false arrest is DISMISSED as to this defendant and the motion is otherwise DENIED; and it is further

ORDERED that the summary judgment motion of defendants Wing and Brown is GRANTEE, IN PART and DENIED IN PART in that all claims in the complaint are DISMISSED as to these defendants with the exception of the plaintiff's claim that he was denied procedural due process when he was not permitted to cross-examine defendant Scott in the SUNY Cobleskill disciplinary hearing; and it is further

ORDERED that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.

---

**8.** It is also noted that defendant Scott's reliance on *MacFawn v. Kresler*, 88 N.Y.2d 859, 644 N.Y.S.2d 486, 666 N.E.2d 1359 (1996) is equally unavailing. In *MacFawn*, the court dismissed an information charging plaintiff with attempted grand larceny "because it concluded that the fact alleged by the People were not legally sufficient to support the charge." *Id.* at 860, 644 N.Y.S.2d 486, 666 N.E.2d 1359. The Court of Appeals found this dismissal to be on procedural grounds because the prosecution had been at liberty to amend or refile the information to correct its deficiencies but apparently chose not to. *Id.* In the instant case, the court did not dismiss the felony complaint due to any facial insufficiency. Rather, the charge was only dismissed after the complainant's oral testimony was heard by the court and proof of forcible compulsion was found lacking. This sort of dismissal most certainly implicated the inability of the prosecution to proceed on the merits, unlike the case in MacFawn where the prosecution was unnecessarily abandoned.